SIROCCO ENGINEERING CO. v. B. F. STURTEVANT CO.

(District Court, S. D. New York.   October 8, 1913.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—CENTRIFUGAL FAN.

   The Davidson reissue patents, Nos. 12,796 and 12,797 (original No. 662,395), for a centrifugal fan or pump were not anticipated and disclose invention. The claim that the reissues are invalid because the claims are broader than those of the original patent and because the corporation to which they were issued was not an assignee of the original patentee but merely a licensee *held* not sustained. Both patents also *held* infringed.

   In Equity.   Suit by the Sirocco Engineering Company against the B. F. Sturtevant Company for alleged infringement of United States letters patents No. 12,796, reissued May 26, 1908, application for reissue filed March 16, 1908, and No. 12,797, reissued May 26, 1908, application for reissue filed March 16, 1908, original patent No. 662,-395, dated November 27, 1900, both for "centrifugal fan or pump." On final hearing.   Decree for complainant.

   See, also, 173 Fed. 378.

   Fraser, Turk & Myers and Arthur C. Fraser, all of New York City, and Frederick P. Fish, of Boston, Mass., for complainant.

   Benjamin Phillips and Alfred H. Hildreth, both of New York City (Omri F. Hibbard, of New York City, of counsel), for defendant.

   RAY, District Judge.   These two reissue patents, No. 12,796 and No. 12,797, dated May 26, 1908, are spoken of as the Davidson reissue, as he was the alleged inventor, but same were issued to Sirocco Engineering Company as assignee. The original patent was issued to Samuel C. Davidson, of Belfast, Ireland, November 27, 1900, No. 662,395, on application filed September 21, 1898. About July 10, 1907, the Sirocco Engineering Company with Samuel C. Davidson brought suit against the B. F. Sturtevant Company, based on the original patent, but while that suit was pending the original patent, No. 662,395, was reissued as three separate patents, and this suit is on two of such reissue patents. The defenses are noninvention, anticipation, noninfringement, invalidity of the reissues because of unreasonable delay in applying therefor, unlawful broadening of the claims in scope, and invalidity of such reissues because granted to Sirocco Engineering Company as assignee when in fact it was a licensee only and therefore not entitled to the reissued patents.

   Of patent No. 12,796, claims 1, 5, 7, 10, and 13 are in issue. Of patent No. 12,797, claims 1, 3, 4, 5, 10, and 14 are in issue. These read as follows (patent No. 12,796):

   "(1) A centrifugal fan or pump, comprising a rotary member having numerous elongated blades arranged lengthwise in approximately axial direction and in substantially drum form, so as to inclose within them a relatively large and practically unobstructed intake-chamber, and in transverse section arranged, relatively to the axis and direction of rotation, to carry the fluid with them rotatively and discharge it tangentially, and a means for so mounting said rotary member as to permit the tangential escape of the fluid discharged from said blades.   *   *   *

"(5) A centrifugal fan or pump, comprising a rotary member having numerous elongated blades of a length approximating nine or more times their radial depth arranged lengthwise in approximately axial direction, and in substantially drum form, so as to inclose within them a relatively large and practically unobstructed intake-chamber, and in transverse section arranged, relatively to the axis and direction of rotation, to carry the fluid with them rotatively and discharge it tangentially, and a means for so mounting said rotary member as to permit the tangential escape of the fluid discharge from said blades. * * *

"(7) A centrifugal fan or pump, comprising a rotary member having numerous elongated blades of a length approximating nine or more times their radial depth, said blades arranged lengthwise in approximately axial direction, and in substantially drum form, so as to inclose within them a relatively large and practically unobstructed intake-chamber of a diameter approximating ten times the radial depth of the individual blades, and in transverse section arranged, relatively to the axis and direction of rotation, to carry the fluid with them rotatively and discharge it tangentially, and a means for so mounting said rotary member as to permit the tangential escape of the fluid discharged from said blades. * * *

"(10) A centrifugal fan or pump, comprising stationary and rotary members, the rotary member having numerous thin elongated blades arranged lengthwise in approximately axial direction, and in substantially drum form, so as to inclose within them a relatively large and practically unobstructed intake-chamber, and in transverse section arranged, relatively to the axis and direction of rotation, to carry the fluid with them rotatively and discharge it tangentially, the blades being approximately as narrow radially and as close together as set forth, and the stationary member having an eye through which the fluid is drawn coincident with said intake-chamber and of a diameter substantially equal to that of said chamber, and having means for so mounting said rotary member as to permit the tangential escape of the fluid discharged from said blades. * * *

"(13) A centrifugal fan or pump comprising stationary and rotary members, the rotary member having numerous elongated blades arranged lengthwise in approximately axial direction, and in substantially drum form, so as to inclose within them a relatively large and practically unobstructed intake-chamber, and in transverse section arranged, relatively to the axis and direction of rotation, to carry the fluid with them rotatively and discharge it tangentially, the blades being narrow radially in proportion substantially as set forth, and the stationary member comprising a casing adapted to permit the tangential escape of the fluid discharged from said blades."

The claims in issue of patent No. 12,797 read as follows:

"(1) A centrifugal fan or pump, comprising a rotary member having numerous elongated blades arranged lengthwise in approximately axial direction, and in substantially drum form, so as to inclose within them a relatively large and practically unobstructed intake-chamber, and in transverse section arranged, relatively to the axis and direction of rotation, to carry the fluid with them rotatively and discharge it tangentially, said blades being inclined forwardly in the direction of rotation and proportioned substantially as set forth, and a means for so mounting said rotary member as to permit the tangential escape of the fluid discharged from said blades. * * *

"(3) A centrifugal fan or pump comprising a rotary member having numerous elongated blades arranged lengthwise in approximately axial direction, and in substantially drum form, so as to inclose within them a relatively large and practically unobstructed intake-chamber having a diameter equal to at least four times, and an axial length exceeding three times, the radial depth of the individual blades, and said blades in transverse section arranged relatively to the axis and direction of rotation, to carry the fluid with them rotatively and discharge it tangentially, said blades being inclined forwardly in the direction of rotation and proportioned substantially as set forth, and a means for so mounting said rotary member as to permit the tangential escape of the fluid discharged from said blades.

"(4) A centrifugal fan or pump, comprising a rotary member having numerous elongated blades of a length approximating nine or more times their radial depth, said blades arranged lengthwise in approximately axial direction, and in substantially drum form, so as to inclose within them a relatively large and practically unobstructed intake-chamber of a diameter approximating ten times the radial depth of the individual blades, and in transverse section arranged, relatively to the axis and direction of rotation, to carry the fluid with them rotatively and discharge it tangentially, said blades being inclined forwardly in the direction of rotation and proportioned substantially as set forth, and a means for so mounting said rotary member as to permit the tangential escape of the fluid discharged from said blades.

"(5) A centrifugal fan or pump, comprising a rotary member having numerous elongated thin blades arranged lengthwise in approximately axial direction, and in substantially drum form, so as to inclose within them a relatively large and practically unobstructed intake-chamber, and in transverse section having their outer edges inclined forwardly, in the direction of rotation, to such effect that the outer or discharging width of the ports between them is not greater than their interior or inlet width, whereby to carry the fluid with them rotatively and discharge it tangentially.   *   *   *

"(10) A centrifugal fan or pump comprising a rotary member having numerous elongated blades arranged lengthwise in approximately axial direction, and in substantially drum form, so as to inclose within them a relatively large and practically unobstructed intake-chamber, and said blades formed as curved plates having their outer edges turned forward in the direction of rotation, and arranged with a forward angle or lead, with their outer edges in advance of their inner edges, so that the outer or discharging area of the ports is less than their interior or inlet area.   *   *   *

"(14) A centrifugal fan or pump comprising stationary and rotary members, the rotary member having numerous elongated blades arranged lengthwise in approximately axial direction, and in substantially drum form, so as to inclose within them a relatively large and practically unobstructed intake-chamber, and in transverse section arranged, relatively to the axis and direction of rotation, to carry the fluid with them rotatively and discharge it tangentially, said blades being inclined forwardly in the direction of rotation to such effect that the outer or discharging width of the ports between them is not greater than their interior or inlet width, and the stationary member having an eye through which the fluid is drawn coincident with said intake-chamber, and of a diameter substantially equal to that of said chamber, and having means for so mounting said rotary member as to permit the tangential escape of the fluid discharged from said blades and the aggregate effective area of the ports between the blades of said rotary member at least equal to the area of said eye."

Patent No. 12,796 declares that the invention has reference to rotary fans or pumps in which the fluid operated on is taken in axially and discharged circumferentially; and it relates to centrifugal fans or pumps in which the blades carry the fluid with them in their rotation and thereby throw it outward by centrifugal force, as distinguished from propeller fans or pumps in which the blades act upon the fluid with a wedging action pushing it from them without materially rotating it.   It also says:

"According to my invention the rotary member of the fan is constructed with numerous thin elongated blades arranged in substantially drum form being extended in approximately axial direction so as to inclose within them a relatively large and practically unobstructed intake-chamber and said blades in transverse section being arranged relatively to the axis and direction of rotation to carry the fluid with them relatively and discharge it tangentially, and said rotary member is so mounted as to permit the tangential escape of the fluid discharged from its blades."

These blades are the wings or vanes which impart motion to the air after it enters the intake-chamber, which is the space within the drum formed by these blades set up edgewise. The eye is an opening in the case inclosing these blades, wings, or vanes at and about the axis through which the air enters the drum. The ports are the spaces between these blades and through which the air passes from the intake-chamber and where it is taken up, so to speak, by the blades and carried forward by them and thrown off tangentially as the blades rapidly revolve. These blades are quite numerous; may be long or short but are narrow. It is essential to maintain a proper proportion between the eye, the intake-chamber, the ports, and the wings. The patent says:

"The blades are so numerous as to follow each other in close succession, being spaced apart preferably a distance approximating two-thirds of their radial depth."

The drum-like arrangement of the blades is such as to inclose within them an intake-chamber, which preferably is approximately cylindrical and which is of large dimensions as compared with fans heretofore existing. Its diameter in the preferred proportions is five-sixths of the external diameter of the series of blades, and its length or axial dimension approximates at least three times the depth of the individual blades and in the preferred proportions is approximately nine times such depth. The patent also says:

"The drum-like series of blades is supported in any suitable manner upon a shaft or spindle revolving in suitable bearings. A convenient supporting means consists of a disk mounted on a spindle, to which disk the blades are attached at their ends remote from the intake ends. A ring or annular support is preferably provided for the opposite or intake ends. The rotary member of the fan is suitably mounted to permit the tangential escape of the fluid discharged from its blades. If not incased, this fluid can freely escape from it in all directions. If inclosed in a casing, the latter must be so constructed as to permit the tangential escape of the fluid, as, for example, by forming the casing of the usual snail shape with a tangential outlet beyond the periphery of the rotary member. In the operation of my new fan the fluid flows in axial direction into the intake-chamber, in which it expands without preceptibly revolving until it is caught by the blades and drawn into the ports between them, whereby the fluid in these ports is converted into a whirling shell of fluid, whereby it is thrown outward by centrifugal force and discharges from the outer sides of the ports as a whirling and expanding shell of fluid, the individual particles of which move in tangential direction. The blades are so narrow and so close together that no eddy-currents are caused in the ports between them, thus avoiding the loss of efficiency and the whirring or beating noise accompanying the operation of centrifugal fans as heretofore made."

The patent also says:

"It is essential to my invention that the fan-blades shall be adapted to carry the fluid with them rotatively, so that it shall be thrown outward by centrifugal force and be discharged tangentially, in contradistinction to merely exerting a wedge-like action upon the fluid, tending to thrust it outward in radial direction unaccompanied by any material rotation or whirling of the fluid. In a true centrifugal fan it is almost solely the rear surface of the blade which acts upon the fluid, drawing it around by suction, whereas in blades which thrust the fluid outward by a wedge-like action it is the front or advancing side of the blade which is the active face. Blades of the latter

kind require to be inclined or curved rearwardly to a considerable angle, especially at the outer edge which follows behind the middle or major portion of the blade. I use the expression 'in transverse section arranged, relatively to the axis and direction of rotation, to carry the fluid with them rotatively and discharge it tangentially' to exclude such wedging blades and include generically any form of blade adapted to act upon the air by rotating or whirling it, thus including blades which are substantially radial, as well as those which incline forwardly, and either flat, curved, or angled. The operation of my fan when propelling air is accompanied by the existence of a thin shell or film of rapidly-whirling air immediately surrounding the drumlike series of blades, which air is apparently compressed, and outside of this shell the air discharging from the fan escapes tangentially. Whether the fan is provided with a casing or not, the construction must be such as to permit the whirling fluid discharged from the blades to escape tangentially therefrom in outward direction."

Claim 1 of reissue No. 12,796 covers a centrifugal fan or pump having the following elements: (1) A rotary member having (a) numerous elongated blades, (b) arranged lengthwise in approximately axial direction, and (c) in substantially drum form, (d) so as to inclose within them a relatively large and *practically* unobstructed intake-chamber, and (e) in transverse section arranged relatively to the axis and direction of rotation to carry the fluid with them rotatively and discharge it tangentially; and (2) a means for so mounting said rotary member as to permit the tangential escape of the fluid discharged from said blades. I discover nothing at all new or novel in the means for mounting the rotary member. In the light of the specifications, we are to ascertain the meaning and significance of "numerous elongated blades" and "relatively large and practically unobstructed intake-chamber." This claim (1, No. 12,796) is so broad in and of itself as to include any and every fan having "numerous" blades "elongated" arranged lengthwise in approximately axial direction and substantially drum form so as to inclose a relatively large and practically unobstructed intake-chamber and so arranged in transverse sections as to carry the fluid rotatively and discharge it tangentially. So far as the language of this claim is concerned, the intake-chamber may be twice as large as a barrel and three times its length, or the size of a lamp chimney, and there may be 6 or 60 of the elongated blades. In short, no proportion whatever is suggested. But all this is found in the specifications. Claim 5 of this patent differs from claim 1 in that it specifies numerous elongated blades "of a length approximately nine or more times their radial depth" arranged, etc. Claim 7 of this patent differs from claim 5 in that it specifies an intake-chamber "of a diameter approximately ten times the radial depth of the individual blades." Claim 10 differs from claim 1 in that it specifies "thin" elongated blades, and that the blades are "approximately as narrow radially and as close together as set forth, and the stationary member having an eye through which the fluid is drawn coincident with said intake-chamber and of a diameter substantially equal to that of said chamber." Claim 13 differs from claim 1 in that it specifies "the blades being narrow radially in proportion substantially as set forth, and the stationary member comprising a casing adapted

to permit the tangential escape of the fluid discharged from said blades." The words in claims 10 and 13 "as set forth" must refer to the dimensions set forth and stated in the specifications.

The Fournier and Cornu patent (1896, French) and the Levet patent (1890, French) are relied upon as anticipations. The ventilator of Fournier and Cornu consists of a wheel having curved iron blades and is mounted centrally on a disc-shaped casting. The blades are $^{14}/_{100}$ *in width* of the exterior diameter of the wheel carrying the blades and are connected at their ends by circular sheet metal *bands* of the same exterior diameter as the wheel and having an interior diameter equal to $^{72}/_{100}$ of their exterior diameter. To illustrate, if the exterior diameter of the wheel carrying the blades is 100 inches, the blades will be 14 inches wide, and 28 inches of the diameter of the wheel or drum formed by the blades, etc., will be occupied by the blades leaving an air chamber 72 inches in diameter, and the opening into this air chamber (J, J' of the drawings) is of course 72 inches in diameter, unless otherwise obstructed, and it is here that the air or other fluid is intended to enter. All this is shown by the following in connection with the drawings, which cannot be reproduced here, viz.:

"The disc-shaped casting C is splined upon the shaft F of the wheel A. The total width of the paddle wheel may vary but should equal at least two-thirds of the exterior diameter. The blades B are in the shape of an arc of a circle, the tangent G to a blade at the point H where it meets the outer circumferences of the turbine and the tangent G' of said circumference at the same point and directed in the direction of rotation intersect at an angle of 115 degrees. The wheel A rotates in a casing I which may be a casting or consist of iron, and the lateral walls of which are provided with circular openings J, J' whose centers are on the axis of the shaft F of the wheel A and whose diameter is equal to the diameter of the circle formed by the inner edge of the circular bands D, D'. The two openings constitute the suction orifice of the ventilator. A single exhaust opening is formed at K in the cylindrical wall of the casing I, having a width equal to that of the interior of the casing, and a section less than the sum of the sections of both the suction openings J, J'."

The patent says:

"The wheel A turning with the desired speed, the blades B throw out the air between them and draw in the air contained in the middle portion L (air chamber of Davidson), which in turn draws in the air at the outside of the casing I through the openings J, J' (above referred to), said air thus entering naturally the central portion L and passing through the spaces M between the wings B and out freely by the exhaust opening K."

Nothing is *said* in this patent as to the *number* of blades or as to the *width of the opening between them.* However, the drawings show numerous blades curved forward; that is, in the direction of rotation. In some respects Davidson is a reproduction of this patent, but it is different in many respects and an improvement. Davidson has advanced and made discoveries. Both have a wheel with numerous blades mounted thereon which are comparatively narrow, and this wheel is made to revolve to set the air in motion, draw it in, and force, push, or draw it out. Whether these blades in rapid revolution push the air before them or cause a vacuum behind into which the air rush-

es and so is in a way drawn along a short distance before it is expelled tangentially as mud is thrown off by a wagon wheel in rapid revolution, to an extent the Fournier and Cornu patent operates in the same manner and on the same general principle as Davidson. Both have numerous narrow blades; both have substantially the same intake-chamber; in both the air is drawn in axially (that is, at a large opening about the axis, as large as the construction will permit); and in both the air passes out between the blades and in rapid motion passes off generally into space or into and through a conduit to some desired point or place. In similar devices the blades have stood out straight from the axis or have projected forward or have leaned backward, and some have been straight blades and some curved. All this has more or less to do with the effectiveness of the fan or pump. I think invention was involved in devising an improved construction with proper and improved proportioning of parts or elements so as to draw in and force out the greatest amount of fluid in a given time with the same amount of motive power and a fan or pump of the same size. Whether the purpose be to pump foul air out of a room or to force fresh air in, the smaller the fan, if it will do the same work with the same power applied, the better. A proportioning of parts of the device is therefore all-important to secure the greatest possible efficiency, and, while these French patents referred to have given some proportions for some elements, they have not covered the same ground as has Davidson. I have carefully studied the Hotchkiss patent of 1863, No. 40,482, "improvement in blowers," but fail to find anticipation there. The proper proportioning of the parts to secure the best and most efficient and economical results is absent, as are some of the details of construction. It would be a waste of time to describe the whole of the prior art or enter more into detail. In regard to the Hotchkiss patent of 1863, it seems plain that it operates and was intended to operate on a different principle from that of the patent in suit. He rotates the air but very little, if any, and avoids doing so, and so states, but compresses it in the air chamber. I have read with interest the evidence of all the experts and that as to tests made and am satisfied that the reissues A and B in controversy here disclose patentable invention in view of the prior art. It is at least an improvement in producing a greater volume, in compactness, in giving a higher pressure and in economy. It has the advantage of "silence"; that is, it reduces noise. He has discovered and defined the proportions so as to get results.

As to the point raised that complainant Sirocco Engineering Company was a mere licensee of Davidson and not entitled to the reissued patents, Judge Holt has passed on the question on demurrer. Sirocco Engineering Co. et al. v. Monarch Ventilator Co. (C. C.) 184 Fed. 84. Judge Holt said:

"But, assuming the reservations to have been covered by the reissued patent, I think that the instrument, although called a license, was in legal effect an assignment. It was a grant of the patent, with the reservation of a license to the grantor. Littlefield v. Perry, 88 U. S. 205, 22 L. Ed. 577; Frankfort v. Pepper (C. C.) 26 Fed. 336; Pope v. Clark (C. C.) 46 Fed. 792."

I will follow Judge Holt.

As to the claim that there was an unlawful broadening of the claims in scope on reissue, I am not at all satisfied that such is the case, and I do not see that it would be wise to enter here into a detailed discussion of the question. Such discussion would involve voluminous quotations and an interpretation of the language of the specifications. The complainant's brief states:

"In July, 1907, a suit was brought against the defendant under the original patent, No. 662,395, by S. C. Davidson, the patentee, and the Sirocco Engineering Company. While testimony in this (that) was in progress, the defendant discovered an unprinted French patent of Fournier and Cornu, dated 1896. Thereupon, through excess of caution and probably unnecessarily, the Davidson patent was reissued in three divisions."

The main ground of reissue was that so much was included in the one patent that confusion and misunderstanding was liable to arise, and that, while the invention had been made by Davidson, he, not having this prior art referred to before him, had used language which was too broad, and it was the purpose to narrow the claims and specifications so as to include the invention of Davidson only, excluding everything covered by the prior art, and so framing the language of the reissue as to leave no room for doubt. All this is shown by the application for reissue, etc. On careful examination and consideration I fail to discover any unwarranted broadening of the claims or of the scope of the same. It was the purpose to make the reissue more narrow and yet more definite, certain, and specific but not to broaden the claims. The omissions, additions, and changes were made for this purpose and, I think, were proper and within legitimate bounds.

After considering the voluminous record and briefs, I am of the opinion that the patents in suit disclose invention and are valid.

### Infringement.

The main contention of the defendant on the issue of infringement is that defendant's fan does not have "a relatively large and practically unobstructed intake-chamber" which is an element of the claims of the patents in suit. I do not think this contention can be sustained. The defendant supports its blades on spokes or spider arms, which as matter of fact pass through the intake-chamber, but they are not a material obstruction to the ingress and egress of air, and it seems to me that under the proof the intake-chamber of the defendant's fan is not only "relatively large" but *practically* unobstructed." *Practically* there is no detriment to the operation of the fan, and defendant does not claim there is. These spider arms in defendant's intake-chamber which do no harm, which do not impair the effectiveness and usefulness of the fan or chamber, leave the chamber "practically unobstructed." For practical purposes and usefulness they do not obstruct. It is not at all certain they do not add to the effectiveness of the fan. I think infringement is clear. It is not considered necessary to go into the English and German litigations and decisions all in favor of the patentability of Davidson's discovery and the validity of these

claims. I have not overlooked the contention that there was such great delay in applying for the reissue that same is invalid. Under all the circumstances shown, I am of the opinion there was no undue delay. The motion to expunge testimony is denied. It has all been considered and given such weight as the court thought it entitled to.

There will be a decree for the complainant as prayed, with costs.